Howard Levine v. Michael Dowd, Adlai Gregory Joan Bass Mr. Levine? Yes sir. Good afternoon. Good afternoon. How far did you travel today? From Sydney Park to here. What were the roads like for you? In the beginning, terrible. Later in my getting out here, I had to stop in Will County to do something, and then I got out here. It got better when I got west of 55th. So it wasn't too bad at the last half stretch. You start his time when he gets to, okay, good, since I took a couple. Good afternoon. I didn't want them to start your time. Good afternoon, Justices. I'm Howard Levine, and I represented Sharon Dowd in the trial of this cause, and I'm here on the appeal. I think this case presents some interesting questions in the applicability of the law under Section 504 of the Illinois Marriage and Dissolution of Marriage Act. Specifically, in this case, the gross income of Mr. Dowd, who is an executive in a liquor distributing business, by his testimony was somewhere between $28,000 and $29,000 a month. My client has a high school education. The parties were married approximately 20 years at the time that the dissolution of marriage was filed, and a little over 21 years at the time of the decision. The decision in this case revolved around the way Mr. Dowd is paid. He gets a base income, and then he gets bonuses each year, in addition, which are determined in a manner consistent with the performance of the company and his performance. His gross bonus in the year 2010 was approximately $145,000, and at the time that we tried this the bonuses are not determined until the end of the year, but it appeared from his testimony that his gross bonus in 2011 would also exceed $100,000. The evidence in the case showed that Mrs. Dowd, during the course of the marriage, had had substantial non-marital property, and that she had contributed approximately $500,000 of her monies to the marital estate. We made no claim that that $500,000 should be returned, because it was gifted into the marital estate and into joint tenancy property and other expenses of both Mr. Dowd and his daughter, and that this should have been a factor that may have been considered under 504, which indicated contributions by the party seeking payment, which would have been number 10 of the factors. After my client testified, my client has a high school education, and at the time of the divorce, her monthly income was approximately $1,200, and her total income, including maintenance, would have been about $7,515, including her earnings. She works at a nursing home. There is a substantial disparity between his income and hers. It's our position that the court, and we admit that the standard of proof in the case is an abuse of discretion. And we believe that Judge Barron, in his ruling, abused the discretion, because what he did was he limited my client's maintenance without, we believe, applying the factors under Section 504 of the Act. He said that he was limiting maintenance so that for the first $50,000 of bonus, after she got the $6,100 a month and that taking into account the taxes, she would get one half of the $50,000. The second $50,000, he granted her 20% of the bonus and limited her to 0% of the bonus above $100,000. I believe that he did not apply the factors under Section 504 of the Act and abused his discretion by limiting the maintenance when, in fact, we proved by clear and convincing evidence that those bonuses were coming and coming every year in excess of $100,000. In the record, the court makes a statement, which I put into my reply brief, which I think is interesting. It's the record, pages number 410 to 422. Judge Barron says, and this is not at the end of his decision, but at the end of my reconsider his position with reference to the bonus. He said, I thought this case over very seriously. I spent a lot of time on this case, which we both did. I did what I did for a good reason. This is in response to me. Just so you know, I didn't give her a bigger percentage of the second bonus because in the final analysis, I thought to myself, I know I got to sit, take care of her for a long time. What factor of Section 504 is that? He then went on to say, but I also got to sit, give him the incentive to keep working. And I couldn't think of a better way to keep him incentive sit to work hard just to think at least if he gets a second bonus by working hard, he can share a little bit larger share. And that was my motivation. I think it was a good motivation. I intend to stand by it. The law is not run on motivations. It's run on law. And it would seem to me that based upon all the facts in this case and the record in this case and my client's contributions to the marital estate, that the courts should have awarded her 50% of the bonus income, which would have allowed her to maintain a And the standard of living that they would have enjoyed had the marriage not been dissolved. Isn't there an example of a sort of classic exercise of discretion? What the trial court said? I thought it was an abuse of the discretion because I think that even in a circumstance justice like this, there has to be, you have to look at the factors and determine, I don't think he gave a decent reason of why he did it. I think he just arbitrarily said, I'm not giving her anything. Where in the law can you limit the maintenance based on those circumstances, particularly looking at her circumstances as opposed to his? I respectfully think that that's discretion, but I think he abused that discretion. What's wrong with the judge articulating the thought that, because we see it all the time here on appeal, where maintenance is ordered and then somebody retires or quits so that their income is changed greatly. Agreed. To avoid. I do think the judge had a valid purpose in giving the husband incentive to keep working really hard to earn that $100,000 bonus. Well, but he was already earning it. And he's worked for the same company for 27 years. He has the ability and if you see, he is not in a situation where he had all of his income spoken for. His post-divorce, post-dissolution expenses were something around $3,100 a month with an income of $28,000. My clients were greater because she was in the home making the mortgage payment and had expenses in excess of $7,000 a month and had no way of earning or coming anywhere close to his income in the future. So it would seem to me that if he applied the factors under the Marriage and Dissolution of Marriage Act, I think that his statement of wanting to keep him working, he showed no reason why he didn't. If he didn't want to work, obviously maintenance is always modifiable, but the fact of it is is he precluded my client from modifying on the topic. What he did in essence was saying, let's say he gets a bonus of $300,000 next year. I'm just giving you an example. My client under this particular decision would be precluded from going in and saying, hey, that's a change in circumstances. I'm entitled to some of that to increase my maintenance. I don't think he had the authority to do that under the statute the way it's read. Did he ever get a $300,000 bonus during the course of the marriage? He got one of $145,000 and we believe that his 2011 would be greater than that, but I can't tell the court what that was because it wasn't in the record of the case at the time. It just seems to me, and I don't mean to argue with you. Of course you do. That's why we're here. By setting that $100,000 cutoff, allowing anything above that to go to him. It seems to me he was trying to fashion a remedy that would encourage the maintenance to keep flowing in for many years. Maybe, but he also, on the other hand, precluded her from sharing in the top end. He still would have the right. If he wanted to retire next year or he lost his job, he would come in and reduce it. There's nothing on the bottom end that says he's got to keep paying. See, I think that the abuse of the discretion is saying you can't come back and ask for more because I'm saying that it's zero over $100,000 and the second $50,000 is only 20%. This is, in my opinion, an income equalization case and should have been an income equalization case given my client's contribution and given the length of the marriage. Why couldn't you come back in and ask for an upward modification? Because if it's bonus income only, he, in essence, did what one would do in an agreement. He said, you don't get any of it. What would be my pleading? The pleading said anything over $100,000, she's at zero. Okay, but $300,000 would be a change in circumstance that ought to be enough. You're probably right, but not with the finding of the court that she can't get any of the bonus above $100,000. In other words, it basically precludes a modification. And I'm not suggesting that I wouldn't try that, but it would seem to me that under the circumstances, I think she'd be in deep trouble because of the court's finding which literally, that would be a contemplated change in circumstances which the court already considered at the time. So I think, Justice McDade, that she would be in deep trouble trying to make that argument given this decision. Had he just said bonuses above $100,000 are reserved, then both parties would have, she might have had a right to come back and ask for it. This way, I don't believe she would. And I think you also have to look at the other considerations that I raised in both my brief and in my reply brief because not only does he get these bonuses, but he has significant perks as a result of his employment. He gets a country club membership that's paid for. I'll buy it. Some of it is used for business purposes. He admitted some of it was for pleasure. He gets trips and vacations that are paid for by the company. He gets a car, insurance that are paid for by the company, all of which my client doesn't have. He drives a brand new car every year, insurance paid, payments paid. This, I don't think Judge Barron took into consideration at all. And I think if you look at the totality of the circumstances, her preclusion from going forward is an abuse of discretion. And I don't believe that Judge Barron actually followed the law in reference to the way that if you look at the factors under 504. Counsel, that's two minutes. Really? I'm sorry. All right. With reference to the attorney's fees, that was the second part of our appeal. I had asked for a contribution for attorney's fees, and I'm going to try to make this one short because everybody knows the law. There's no question my client got some assets as a result of the divorce. Most of her assets were illiquid and are in a house which she got 54 percent of. The circumstances are such that given his income and given the method in which the decision was fashioned and given the fact that it was a several-day trial, and I don't think anyone questioned the fees, I had asked for a contribution of $29,000. I believe that the law is clear that she does not have to denude herself of the remainder of her assets in order to get some contribution toward her fees. Judge Barron gave her zero. Are you asking us to look at the $29,000 or the $6,000 plus that hasn't been paid? I was asking for the entire $29,000 because that was the balance at the time of the judgment. At the time of the motion for reconsideration, some of it had been paid, but I'm looking at the entire $29,000. I just believe that the court should reverse and remand both the decision on the maintenance and the decision on the attorney's fees in a manner consistent with following the statute and following the law. I know my learned and esteemed brother who is here will tell you that this is not an abuse of discretion, but I believe that it is. Thank you. If you don't mind my asking, and I probably should know the answer myself, but if the $29,000 were awarded, what portion would she have paid? I believe she would get back probably close to $20,000. What did she pay already, or? $22,000. $22,000? Yeah. That would be as of the date that I did it, not as of today's date. Of course, that didn't include the appeal or anything else. All right. Thank you. Any questions? Thank you. Thank you, Justices. Thank you for listening to me. Mr. John Beck, is that correct? That is correct. Thank you. Justice O'Brien has already told us what the roads were like coming from your direction, so I'm sure. Fortunately, Plainfield was not probably as good as Cole City may have been. Plainfield, I couldn't get out of my subdivision and went five different directions before I could finally find one. Thank goodness I still have an SUV. We're glad you're here, sir. Thank you. It may please the Court, Mr. O'Brien and Mrs. Dowd. My name is Gregory John Beck, and I have the pleasure of representing Michael Dowd in this appeal. As has been noted thus far, the standard of review that this Court is reviewing, both components, both the maintenance aspect as well as the attorney's fees contribution aspect, is the abuse of discretion or manifest way of the evidence. In this case, I do believe that Judge Barron's decision is 100 percent within his discretion. I believe that he enunciated what he believed to be Mrs. Dowd's reasonable needs, going forward after the dissolution. There's a delineation within the record, and I believe within Judge Barron's decision, as to what her expenses were while the case was pending at the time of the trial, and her income expense affidavit of her projected expenses if she were to move to a house in Frankfort after the sale of the marital residence in Manhattan, which I believe was $7,515, that she believed were her reasonable expenses to equate to the standard of living that was What gets lost in Mr. Levine's brief and argument is that the award of maintenance that Mrs. Dowd received, in terms of the base amount, $6,100 per month off of Mr. Dowd's $165,000 per year base salary, is 44.38 percent of his gross. Now, as I delineated in my brief, given the ever-changing tax code, there's really no net numbers that anybody worked off of. Neither Judge Barron, nor Mr. Levine in his brief, nor myself in my brief, because with Social Security changing up and down as the percentages left and right, really this case is mostly analyzed by all the trial judge, trial counsel, and appellate counsel from a gross number standpoint. So I am going to refer to mostly gross numbers. If my client hits all the way up to the $100,000 of bonuses with the 50 percent structure on the first 50, and then the full $50,000 on the second $499.99, then Mrs. Dowd would receive in maintenance well in excess of what her claimed monthly reasonable needs are, because she would be receiving a gross amount in excess of $11,000, actually almost $12,000. That's just out of maintenance. What the next factor to take into consideration is, and we lay it out in the chart in our brief, to try to keep it as simple as possible, because unfortunately when you use words like that, numbers sometimes get lost in words. So we laid out a chart within our brief, which is the same way that we prepare for trial. What that demonstrated is, even if she received only 3 percent rate of return on her non-marital estate, coupled with her disproportionate distribution of the marital estate, she would receive roughly an additional $20,000 of income, just in dividends or interest earnings. Now, obviously, there's some reasonable amount that would be less than that, in terms of what she probably would invest 100 percent of it. Once the marital residence is sold and she takes her 54 percent, she would likely, as she testified, buy a new house in Frankfort, whatever area she chose to live in. However, there's still major income-producing capabilities that her non-marital estate, coupled with her award of the marital estate, or put another way, Section 504A1, for the court to take into consideration. However, even backing that out and going just based purely on the base maintenance and bonus structure, she more than meets her income expense affidavit. Judge Barron's... Doesn't that go to the lifestyle they enjoyed during their marriage? I mean, it's, you know, there's no hard and fast rule, but it's a long-term marriage. And she did contribute a lot to the marital estate. And, you know, she had this life together, and it wasn't like just in the last two or three years of their marriage that they enjoyed this. But it seems like throughout the marriage, for 20 years, they had a lifestyle that would far exceed just the base expenses that she had. I would agree with that, Justice O'Brien. And what was also clear in the record is that when it came to my clients' bonuses, obviously, like most people in sales, as they move up in their positions, those bonuses got bigger. And in 2010, it was the only bonus that exceeded anywhere around the amount that it was at the $145,000. But taking into account the standard of living, if she... I believe her income expense affidavit, her post-dissolution income expense affidavit, which was the $7,515 and maybe a couple cents here and there, did project what she believed to be her reasonable needs, living the standard of living approximate to that during the course of the marriage. Because her income expense affidavit during the trial was actually about $1,000 lower. And as Judge Barron found, her reasonable needs to be. So he pared down the income expense affidavit from what her claim expenses were, and I believe he found her realistic expenses to maintain the standard of living plus put away additional funds for retirement at $6,400. So I believe that taking account the maintenance structure and the bonus structure, still more than meets the reasonable needs that Judge Barron found to be her reasonable needs based upon all of the 504 factors, which includes the additional, for lack of a better term, stacking away of a couple bucks into an IRA or some other kind of tax-deferred plan. So I do believe that that really is taken care of. And again, I know we're working from gross numbers here, but when we take it out and we look at the net numbers, I still believe that she's more than going to meet her reasonable needs. Can we walk through the gross numbers for me, because I'm a lawyer and I did not want to be an accountant. It's $7,000 a month approximately in maintenance, in that base maintenance, correct? No, the base maintenance was $6,100. Okay, so $6,000 times 12 months is $72,000. Correct. And then it's 50% of $50,000, which is $25,000. Correct. And then it's up to $100,000, another 20%, which is $20,000. So the grand total would be? The grand total would be, it's actually in my brief, just this right, $123,195.96. So $123,000 would be half of about a $250,000 income. And during the course of the marriage, was the income $250,000, $290,000? It varied throughout the course of the marriage. In the 2010 bonus, and this is, Judge Barron discusses this in his decision, that part of the reason that my client's bonus was so high in one year is that city beverage that he works for was bought out. So when it was bought out, and because he had the years of service, as Judge Barron phrased it, as a distribution. But it was, in essence, what my client had built up through the years by working for the prior employer. It's still the same employer, but subsequent to the buyout, he received a bigger chunk of money in that year due to the buyout and the change of the ownership of city beverage. Did Judge Barron's order allow her to come in if the base salary went up? It did not, but it didn't preclude it, which is, frankly, the more important part. Mr. Levine and I were here arguing before your justices before in the Gosney case a few years ago, three times. So I'm sure that you're probably not all that happy to see us yet again. And what I disagree with Mr. Levine's argument before your justices today is that there's nothing that precludes her. If there would have been a preclusion, God forbid Mrs. Dowd got in a car accident, and she was in need of additional maintenance, there is no doubt that regardless as to what my client's bonuses were, that's a substantial change in circumstances. If my client similarly were to have lost his job, that would be a substantial change in circumstances entitling him to a reduction. While I understand Mr. Levine's argument, I don't believe that it holds water, that she's barred from coming back and receiving any type of an increase in maintenance, whether it be from a base income perspective or anything else. Let's say hypothetically that my client's gross guaranteed income was reduced because the company wasn't producing profits. Not surprising in this day and age. But he continued to receive a bigger bonus structure, not perhaps all that indifferent from an associate in some law firms. He could just as easily come in and say, well, I'm entitled to a reduction of maintenance because I'm not guaranteed the same amount of money. It would be completely available for a court to say, OK, you're receiving less in terms of your guaranteed amount, so I'll reduce you to, let's say, $5,000 to use a round number. But your bonus structure went from 20% of what you generated to 30% of what you generated, so therefore you're going to pay a bigger percentage on your bonus. I think that's a law, frankly. And I don't think there's much question about it that if those kind of changes in circumstances happen one way or another, that both parties can come back in. And it's a five-year reviewable. It's not what we in the practitioning world probably shouldn't use as a drop-dead award that at the end of five years, it's over. It's not. At the end of the five years, it's reviewable. So it's reviewable just as much to increase, to decrease, or potentially stay the same. And I really do truly believe that, especially from a discretionary standpoint, from a gentleman who is 55 years old, and to avoid what, Justice Wright, what we refer to as many people coming in here and saying, well, I'm going to pull the plug because I don't want to pay the maintenance I don't want. This becomes a completely reasonable way to do it. And not only is it discretionary, I think it's actually well-reasoned. And frankly, I haven't seen it in any of Judge Barron's cases. I appear before him on a daily basis. And for a practitioner standpoint, in a trial court level, I agree with it because you're giving that incentive. But you're still taking care of the recipient's spouse. They're still getting a portion of it. And frankly, I don't believe the evidence demonstrated that the awards in excess of $100,000 of bonuses were likely to come because I believe it really only came one year. And as Mr. Levine noted, there is some question as to whether or not it would come in 2011. But certainly at the end of that five years, or if there's a substantial change of circumstances in the meantime between the time of the judgment and the five years expiration of the original award of maintenance, either party can come back in and review this order. And given the fact that you're giving somebody, especially who's probably getting close to the retirement age, and with no direction from the General Assembly, from appellate courts, as to what is a reasonable retirement age, and you shouldn't to a certain extent because that's a personal decision. And it gets into so many factors as to how those parties decided how they were going to live their lives and what they were going to save. As Judge Barron stated, these parties accumulated a little in excess, right around $1 million in assets during the course of a 20 to 21 year marriage. Mrs. Dow got a disproportionate, albeit slightly only 4% disproportionate, share of the award in the net equity of the marital estate. Plus she was entitled to the principal pay down that she made on the mortgage until the house sold. Mrs. Dow also has a substantial non-marital estate. If you take into account her testimony and her income expense affidavit, the stipulations of the parties, she's around $154,000 of non-marital estate net value. So while she doesn't need to invade, I would believe, any of that under my calculations that I lay out in my brief, she can still earn interest income or dividends, however she chooses to invest, that will exceed her monthly expenses. Just on the base amount, if my client didn't receive a penny, a bonus amount. Coupled with her $1,250 per month income of her own. I'd like to turn to the attorney's fees issue and I'll try to keep this somewhat concise. Mrs. Dow's total fees incurred, as I read in Mr. Levine's motion, was a little bit over $29,000. That's from the date of being retained up until the date that he filed his petition for contribution to fees. Well, I believe the petition for fees was under 508A. We can examine it either under a 508A or a 503J contribution. She received a disproportionate share of the marital estate. She has a substantially larger non-marital estate than my client. The fees, oddly enough, were almost exactly the same if I remember off the top of my head. They were right around $29,000 for both parties in terms of the attorney's fees incurred at the trial court level. And even though I became a lawyer through not doing math, I wound up paying way too much of it by being involved in matrimonial law, her total fees of the $29,000 is roughly 6% of her estate. Now, I believe that that's... Does that include her non-marital assets or only the marital? That includes her non-marital assets. Because to me, $150,000 in non-marital assets isn't something we should factor in because that will be gone in the blink of an eye if she happens to get sick. I agree with you. So I'm not sure that that's a relevant consideration for us or the trial court. Even if we back out the $150,000, the $29,000, if she's awarded over $500,000 of assets and she's awarded maintenance that even the base amount without a penny of bonus money all but meets $300 of her reasonable needs according to Judge Barron, and she earns $1,250 per month, so her reasonable needs are met under the maintenance between her own income of the $1,250,000 and the base amount. Thank you. When we factor everything into consideration, I believe it's a Second District case that says that ability to pay doesn't mean ability to pay without pain. This pain for attorneys' fees to everyone going through a divorce case is usually painful in some varying level, whether it be the reason the fees are incurred or the amount of fees that wind up getting incurred. But I don't believe that it can be said that based upon the overall division of the marital estate combined with the maintenance award that will meet her reasonable needs, even on a base level, and if you take 100% of her income expense affidavit and page one thereof, as true as what is a factor to get her to living a reasonable standard of living established during the course of the marriage, she still can afford to pay her attorney's fees, especially when we're looking at the fact that at the time the fee petition was heard, I think there was only a little under $7,000 owed. So we're requesting that the court affirm Judge Barron's decision, both as it relates to the issue of the maintenance, the bonus structure, and overall maintenance awards, as well as the denial of the petition for attorney's fees. Did she work during the course of the marriage? There was testimony that she worked as a real estate agent. She maintained a real estate license, which I believe expired or lapsed the month after the trial was to occur. Was she required to work during the course of the marriage? No, she was not required to work during the course of the marriage. Any other questions? Thank you. Thank you very much. I think the court and Mr. Jumbeck is somewhat disingenuous. I think the amount of gross income to her is maxed at $119,196, which would be $6,100 a month in maintenance, $2,100 on the first 50%, and $833 a month on the second for a total of $99.33 a month, or $119,196. But that's taxable. So she doesn't keep anywhere near that, and it's deductible to Mr. Jumbeck. So if you look at the end result, she will probably pay at least 30% in taxes on the $119,196, and it depends basically on what the taxes are. But it would be approximately, say, $30,000 in federal and state taxes. She's going to be back at exactly maybe meeting her monthly expenses, but maybe not based upon the taxes, whereas he will probably pay little or any tax, plus he will be able to deduct the maintenance against the bonus that he'll be receiving. This was abusive in the way that Judge Barron ruled. If you look at the gross numbers, which Mr. Jumbeck gave you, the gross is fine in dealing with the number, but remember that the number is taxable to my client. I would ask, and the second thing, which is kind of ludicrous, is she didn't get 54% of the marital estate. She got 54% of the sale of the home, and she's the one paying the mortgage during the period she's living there with her horses and so on. His figure is on a rate of return of 3%. You can't get 3% on your money anywhere today, and if you can, tell me where it is because it's a great place to put it because you're getting one, unless you want to speculate in the market, you're getting less than 1% on certificates of deposit and other cash type of investments, which I believe would be called fixed investments, where you can get a fixed income. My client, I believe it would be entitled, this particular situation should be looked at carefully,  Thank you. I appreciate the arguments today by both of you, and we didn't mind seeing each of you here together. We will be taking the matter under advisement, conferencing the case, and hopefully rendering a decision without undue delay. Thank you for your time.